# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:18-cv-556 |
| Plaintiff, | : | |
| v. | : | |
| SEVEN THOUSAND ONE HUNDRED AND 00/100 DOLLARS ($7,100.00) IN UNITED STATES CURRENCY, | : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| Defendant 1, | : | |
| FIVE THOUSAND TWENTY AND 00/100 DOLLARS ($5,020.00) IN UNITED STATES CURRENCY, | : | |
| Defendant 2. | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendants in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## THE DEFENDANTS IN REM

2. Defendant 1 is Seven Thousand One Hundred and 00/100 Dollars ($7,100.00) in

United States Currency. The Drug Enforcement Administration ("DEA") seized Defendant 1 on or about January 15, 2018, from Cornelius Yarbrough during a consensual encounter at the John Glenn Columbus International Airport. Defendant 1 has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

3. Defendant 2 is Five Thousand Twenty and 00/100 Dollars ($5,020.00) in United States Currency. The DEA seized Defendant 2 on or about January 15, 2018, from Alisha Sparks during a consensual encounter at the John Glenn Columbus International Airport. Defendant 2 has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendants under 21 U.S.C. § 881(a)(6). This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendants were seized in the Southern District of Ohio.

## BASIS FOR FORFEITURE

7. The defendants are subject to forfeiture under 21 U.S.C. § 881(a)(6) because they represent property furnished or intended to be furnished by any person in exchange for a controlled

substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## **FACTS**

8. On Monday, January 15, 2018, DEA Task Force Officers Andrew D'Orazio ("TFO D'Orazio") and Eric Doyle ("TFO Doyle") received information regarding the suspicious travel of two passengers, Cornelius Yarbrough ("Yarbrough") and Alisha Sparks ("Sparks"). The officers learned that Yarbrough and Sparks had purchased one-way tickets on American Airlines, within 24 hours of their travel that day, from Columbus, Ohio, to Los Angeles, California.

9. Based on their training and experience, the officers know that narcotics or money couriers often purchase airline tickets within 72 hours of travel to a known source area for illegal narcotics like Los Angeles, California, or to a known destination area for illegal narcotics like Columbus, Ohio.

10. At approximately 5:00 p.m., the officers went to the American Airlines ticketing area of the John Glenn Columbus International Airport to locate Yarbrough and Sparks. TFO D'Orazio observed Yarbrough and Sparks checking in for their flight approximately 30 minutes prior to boarding.

11. The officers observed Yarbrough and Sparks proceed to the airport's Transportation Security Administration ("TSA") screening area. After they cleared TSA screening, TFO Doyle approached Sparks in a way as to not block her egress. TFO Doyle identified himself as a law enforcement officer, displayed his credentials, advised Sparks that she was not in trouble and was free to leave, and asked if she would speak to him. Sparks agreed to stop and speak with TFO Doyle.

12. TFO Doyle advised Sparks that he was speaking to her because of her recent ticket purchase. He asked Sparks if she was traveling with any narcotics, weapons, or large amounts of currency. Sparks stated that she had about $4,000.00 in cash in her purse and permitted TFO Doyle to inspect the money. TFO Doyle observed that the cash consisted mostly of $20.00 bills and that it was separated into several stacks with rubber bands. When asked about her ticket purchase, Sparks stated that she bought the ticket "yesterday" through a travel agency service and that she would be returning to Columbus on Wednesday night or Thursday morning.

13. As they continued to speak, Sparks stated that the reason for her travel was to "kick it with her boyfriend" and that the cash was for shopping and going to a Lakers game at the Staples Center. Sparks advised that she had gotten the money from the bank on the previous day, Sunday, January 14.

14. A subsequent review of the schedule for the Los Angeles Lakers indicated that the Lakers were not playing at the Staples Center between Monday, January 15 and Thursday, January 18.

15. While TFO Doyle spoke with Sparks, TFO D'Orazio approached Yarbrough in a way as to not block his egress. TFO D'Orazio identified himself as a law enforcement officer, displayed his credentials, and advised Yarbrough that he was not in trouble and was free to leave. Yarbrough agreed to stop and speak with TFO D'Orazio.

16. TFO D'Orazio advised Yarbrough that he was speaking to him because of his recent ticket purchase. He asked Yarbrough if he was traveling with any narcotics, weapons, or large amounts of currency. Yarbrough stated that he had $6,000.00 in cash in his duffle bag and gave TFO D'Orazio consent to search his bag. Upon searching, TFO D'Orazio located a bundle of currency in the outside pocket of the duffle bag. The cash appeared to consist mostly of $100.00

4

bills and was divided into two unequal stacks.

17. As they continued speaking, Yarbrough stated that the money was for shopping, which was the main purpose for his travel. Yarbrough was unable to say what he was shopping for but said that he was traveling across the country to shop because there were no nice shops in Columbus.

18. Yarbrough advised that he worked as a tow truck driver for Oscar's Towing. A records search revealed that there is an Oscar's Towing located in Massillon, Ohio, which is approximately two hours from the home address provided by Yarbrough.

19. Based on their training and experience, and their conversations with Yarbrough and Sparks, the officers advised Yarbrough and Sparks that they believed that the money they were carrying was related to illegal narcotics and would be seized by the DEA. The officers asked Yarbrough and Sparks if they would like to come to the DEA's airport office to talk more about the money and their travels. Yarbrough and Sparks both declined and advised that they would like to continue their travels. The officers gave Yarbrough and Sparks receipts for the seized currency and asked if they had any questions about the seizures or would like to provide any more information. They both declined, and the officers ended the encounter.

20. As Yarbrough and Sparks were walking away, Sparks asked if they were going to be watched when they returned to Columbus; however, she walked away before the officers could respond.

21. Upon returning to the DEA's airport office, TFO D'Orazio requested assistance from the Columbus Regional Airport Authority Police K-9 Officer Jenelle Hartman ("Officer Hartman") and K-9 "Daron" to conduct a narcotic detection K-9 sniff on packages containing the seized currency. The requested narcotic detection K-9 sniff consisted of four separate K-9 sniffs.

a. First, the money seized from Yarbrough was placed in a USPS Priority Mail package and sealed. Officer Hartman placed ten United States Postal Service ("USPS") Priority Mail packages in a circle in the DEA office. Five of the packages were empty, and five contained shredded, circulated currency. Officer Hartman and K-9 Daron entered the office and conducted a sniff of the ten packages. K-9 Daron did not show a change in behavior to any of the ten packages. Officer Hartman and K-9 Daron then left the area.

b. Second, TFO D'Orazio replaced one of the packages with the package that contained the money from Yarbrough. The location of the money was unknown to Officer Hartman. Officer Hartman with K-9 Daron returned to the room and conducted a sniff of the packages. K-9 Daron showed a positive alert for the odor of narcotics on one of the packages by stopping at the package, squaring off, and then scratching at the top of the package. TFO D'Orazio advised Officer Hartman that it was the package containing the money seized from Yarbrough.

c. Third, the money seized from Sparks was placed in a USPS Priority Mail package and sealed. Officer Hartman re-established the original circle of ten USPS Priority Mail packages. Again, five of the packages were empty, and five contained shredded, circulated currency. Officer Hartman and K-9 Daron entered the office and conducted a sniff of the ten packages. K-9 Daron did not show a change in behavior to any of the ten packages. Officer Hartman and K-9 Daron then left the area.

d. Fourth, TFO D'Orazio replaced one of the packages with the

package that contained the money from Sparks. The location of the money was unknown to Officer Hartman. Officer Hartman with K-9 Daron returned to the room and conducted a sniff of the packages. K-9 Daron showed a positive alert for the odor of narcotics on one of the packages by stopping at the package, squaring off, and then scratching at the top of the package. TFO D'Orazio advised Officer Hartman that it was the package containing the money seized from Sparks.

22. Officers have reviewed information from several sources and learned that on May 5, 2017, a grand jury at the Franklin County, Ohio, Court of Common Pleas, Criminal Case No. 17CR002480, returned an Indictment, charging Yarbrough in Counts One through Five with Trafficking in Cocaine, in Count Six with Possession of Marihuana, and in Count Seven with Having Weapons While Under Disability. On February 28, 2018, Yarbrough entered pleas of guilty to Counts One through Three and Counts Five through Seven of the Indictment. On April 17, 2018, Yarbrough was sentenced to a total of 36 months in prison, which he is currently serving.

23. Upon learning of the case at Franklin County, officers spoke to the Franklin County Sheriff's Office deputies involved in the investigation of Yarbrough and learned the following:

    a. Between January 20, 2016, and February 8, 2016, deputies completed four undercover buys of crack-cocaine and/or cocaine from Yarbrough.

    b. During a traffic stop of a vehicle driven by Yarbrough on February 8, 2016, deputies recovered approximately 9 grams of a substance containing cocaine and $705.00 from Yarbrough's person, $100.00 of which was pre-recorded buy money.

    c. On February 8, 2016, deputies executed a state search warrant at Yarbrough's residence located on Omar Drive in Columbus, Ohio. Two firearms

and approximately 444.79 grams of marijuana were located and seized.

        d.     During the search, deputies interviewed Bianca Yarbrough, who identified herself as Yarbrough's wife. She waived her *Miranda* rights, consented to speak to officers, and advised that since Yarbrough had gotten out of prison in or around 2013, she was not aware of him holding any lawful employment.

24.    In July 2007, Yarbrough was convicted in Scioto County for multiple counts of felony possession of drugs and was sentenced to a term of imprisonment.

25.    On March 8, 2018, the DEA received a claim from Yarbrough, asserting an interest in the $7,100.00. In his claim, Yarbrough stated that he was the lawful owner of the seized currency because he earned it working at Glove Carwash & Detail in Columbus, Ohio.

26.    In support of his claim, Yarbrough included bank records "for verification" of his lawful possession of the currency. The bank statement is for the period of January 17, 2018, through February 6, 2018. The beginning balance for the account on January 17, just two days after the seizure, was $0.00. During the statement period, a total of $3,225.00 was deposited into the account in round dollar amounts, and $2,537.78 was withdrawn.

27.    Yarbrough did not provide proof of employment or salary, and the deposits into the account do not appear to represent a payroll deposit. In addition, there is no indication that the account held sufficient funds to explain the source of the currency in Yarbrough's possession on January 15, 2018.

28.    On March 8, 2018, the DEA received a claim from Sparks, asserting an interest in the $5,020.00. In her claim, Sparks stated that she was the lawful owner of the seized currency because she earned it working at Constant Care Home Health Aide in Columbus, Ohio.

29.    In support of her claim, Sparks also included bank records "for verification" of her

lawful possession of the seized currency. The bank statements cover the period of December 20, 2017, through February 20, 2018. The beginning balance for the account on December 20, prior to the seizure, was $277.86. In total, $1,900.00 was deposited into the account in round dollar amounts, and $2,182.38 was withdrawn, leaving a negative balance in the account on February 20 of ($4.52).

30. Sparks did not include proof of employment or salary, and no deposits into the account appear to represent a payroll deposit. In addition, there is no indication that the account held sufficient money to explain the source of the currency in Sparks's possession on January 15, 2018.

31. Based on the forgoing facts, the United States asserts that the $7,100.00 in United States currency (Defendant 1) and the $5,020.00 in United States currency (Defendant 2) represent property furnished or intended to be furnished by any person in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense in violation of 21 U.S.C. § 846. The property, therefore, is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## **CLAIM FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendants and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendants to assert, in conformity

with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

        (c)       the forfeiture of the defendants to the United States be confirmed, enforced, and ordered by the Court;

        (d)       the Court thereafter order the United States to dispose of the defendants as provided by law; and

        (e)       the Court award the United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711 / Fax (513) 684-6385
Deborah.Grimes@usdoj.gov

## **VERIFICATION**

I, Jonathan C. Hanley, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

6-6-18
Date

JONATHAN C. HANLEY, Special Agent
Drug Enforcement Administration

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
Seven Thousand One Hundred and 00/100 Dollars ($7,100.00) in United States Currency, et al.

(b) County of Residence of First Listed Plaintiff: Franklin
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Franklin
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Deborah D. Grimes, Assistant United States Attorney, 221 E. Fourth Street, Suite 400, Cincinnati, Ohio 45202

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [X] 625 Drug Related Seizure of Property 21 USC 881 |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 365 Personal Injury - Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 690 Other |  | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability |  | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise |  | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment / **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations / [ ] 530 General |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application |  | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / [ ] 550 Civil Rights | [ ] 463 Habeas Corpus - Alien Detainee |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 440 Other Civil Rights / [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)
[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
forfeiture pursuant to 21 U.S.C. § 881(a)(6)
Brief description of cause:
forfeiture

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE: 6/6/18
SIGNATURE OF ATTORNEY OF RECORD: Deborah Grimes

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____